for this afternoon. Numbers 12-2923 and 12-3143, Mr. Rosendorf, Mr. Donley, and Mr. Rich. Take your time. While you're getting ready, for the record, these cases relate to the the court. I'm David Rosendorf. I represent Anderson Memorial Hospital. I've requested to reserve two minutes for rebuttal with respect to my argument. Anderson Memorial Hospital is a hospital in South Carolina, suffered damage to its property as a result of the use of asbestos-containing materials. It almost seems to me when I look through all of the briefing and the arguments made that what you really want is you don't want to be litigating in the court in Delaware, that you'd rather be litigating in South Carolina. Is that correct? That is absolutely correct. We spent eight years trying our case in South Carolina before the bankruptcy was filed. We filed proofs of claim in the case in response to a notice indicating that pre-filed actions could be returned to their courts. We have been subjected to a plan which provides for the Anderson claim and no other property damage claim to be returned to the bankruptcy court for trial in a bench trial in Delaware. Have all the others been settled? At this point, all live PD claims have been settled. At the time of the bankruptcy court, the solo claim, which was another live PD claim at the time, was being returned to state court to complete litigation. The holders of future key property damage demands to the extent they existed, and we'll talk about that, had provisions in the property damage case management order that they would be able to bring their claims in any federal district court that had jurisdiction over them. So the only case that the bankruptcy court was going to retain jurisdiction over to try was the Anderson case. That assumes that there's no future claim. That assumes that, well, no, no, no, because future demands under the property damage case management order are expressly permitted to litigate in any federal district court. So they go to a district court in their forum, they get a jury trial. Anderson is the only claim as to which that is not true. So you have to show that 524G's channeling injunction doesn't apply to this case, but our argument is... It sort of goes against the grain because the problem is that the reason 524G, or at least one of the reasons it was put there to begin with, is because those who have asbestosis can have a very long latency period. Well, you're talking in that particular instance about personal injury claims, and I would submit that personal injury claims and property damage claims are different. And I know one of the issues that you've already raised and that you've heard from is the question of whether the interpretation of 524G under this court's standard engrossments and Owens-Corning completely obviates 524G in the provision for future demands. We would submit it does not. In fact, personal injury is the paradigm for what 524G and the notion of future demands was intended to deal with. It might be the most significant one, but it's certainly not irrelevant to other kinds of claims, right? It is not irrelevant, but we would submit that it is incongruous to be applied to property damage claims, which are in many ways fundamentally distinguishable. You're absolutely correct that a personal injury claim is in many instances unknowable by either the claimant or the debtor. You don't know who has been exposed. You don't know how they've been exposed. You don't know if or when they're going to manifest injury. Property damage, the asbestos-containing material has been sold. It's been incorporated into a property. It's there. They've made arguments, I think, that indicate, look, property owners aren't going to necessarily know they've got asbestos-bearing material in their buildings until some future renovation reveals it. These are future contingencies that, like a latent illness, will come up at some point in the future, and we have to deal with that. That's one of the reasons why we've got these kind of channeling injunctions. We would submit that that is not a future demand, as the term is used. That is a claim which may not have gotten adequate notice in the bankruptcy, particularly in light of the shift in law from Frenville to Grossman's and Owens-Cornyn. We're back to whether these are mutually exclusive terms. That's correct. Why don't you respond to the foreshadowing argument that you got from Mr. Donnelly? Thank you. Thank you. I appreciate that. I think this court hit on certainly something that you would expect me to say, which is that you need to start with the statutory language itself, because 524G5 has a definition of what is a demand. The definition of what is a demand very specifically says it is something which is not a claim. Right. They've acknowledged that, you know, they demean it by saying it's hyper-technical, but they acknowledge that you've got a statutory argument you can make. Right. And they point you to Flint Coat, and that's what I'd like you to go to. Respond to that argument. Judge Fitzgerald looked at this. She specifically talked about it. She rendered a decision in Flint Coat exactly on point. Why is she wrong? I don't know that she is wrong with respect to the particular types of claims that she was dealing with. And that's why I wanted to draw a distinction in talking about personal injury versus property damage. I do think, in many respects, they are fundamentally different. What we are advocating for is not an interpretation of either 524G or the definition of claim that would write 524G out of the books. All that we are saying is that it doesn't logically apply to a property damage claim. And, in fact... Any property damage claim. I'm sorry? Any property damage claim. I don't... Let me put it in terms that are particularly relevant to this case. I do not believe that the plan proponents put on any competent evidence, nor did either of the lower courts make an appropriate finding, that this debtor is likely to be subject to future demands for property damage liability that were not claims in the bankruptcy case. Stick with me on the statutory language here for a moment, okay? The language of 524G-5 speaks of present or future demands. Correct. And that's, I think, the point that Judge Fitzgerald was getting at, and it's been argued to us in the papers, that if you've got a present demand, that is a claim, so they can't be mutually exclusive. So it doesn't make sense. I disagree. And let me give you an example. And it will require us to go back in time a little bit to this court's state of the law pre-grossments. Under Frenville, you could have asbestos in your property. You could know that it's there, but until you've taken steps to remove it or replace it or abate it or there's been a release of fiber, under certain applicable law in certain jurisdictions, that claim would not have accrued, in which case, under Frenville, as this court interpreted the definition of claim, there would not be a claim. I believe that that is something that certainly could be a present demand. That is, it's a liability arising from the same conduct that gives rise to claims, but it is not, under this court's interpretation, pre-grossments. It's not a claim. You think Congress drew a statute just to get around Frenville? I don't believe that that was their only purpose, but not remotely. I think that their purpose was to deal with asbestos personal injury liabilities. But I do believe that that particular language could be encompassed in that ruling. So we believe that the predicates for a 524G trust, with respect to property damage, were not satisfied in this case. If those predicates were not satisfied, we believe that the procedures implemented as part of that trust, including these requirements that provide disparate treatment to Anderson as compared to everybody else, likewise cannot be supported and should be reversed. Can you explain why you think property damage aspects, like the PD trust, should be evaluated separate and apart? I think that's the language, your own language. There was some obligation to view it differently. As distinguished from the personal injury trust? Yeah. Well, I think they each have to stand or fall on their own merits. Doesn't the plan have to be... I mean, there's so many cases that say you judge a plan as a whole. You don't look at this piece and then this piece and then this piece. You're looking at the whole plan as you're judging it. Why are you... what's the basis in law you have for saying, well, in this instance, you should be looking at the PD trust in isolation? Because that's the way the plan was structured. The plan separately classified property damage claims. The plan channeled property damage claims to a property damage trust. It is a relatively unique structure in bankruptcy to have a property damage trust, and in particular to have a property damage trust for so-called future demands. We've only identified... Do you have any authority at all for the case, anything, for the assertion that it's a piece out of a plan and view it, as you've suggested, separate and apart? I believe that each component of a plan must satisfy requirements for confirmation under 1129, and any trust to be created under 524G, and this is a separate trust from the PI trust, must satisfy the requirements of 524G. And so in evaluating the PD trust, which is a separate trust, you have to look at whether that trust satisfies the requirements of 524G. The evidence that they put on was Dr. Martin? Correct. That there was a likelihood of future claims being made, and the court ultimately chose to agree with that. What evidence did you put in that countered that of Dr. Martin? We did not put contrary evidence. However, what Dr. Martin said, and what is clear from her testimony and also from Grace's own acknowledgments, is that she was using the term demand in a colloquial sense. Grace itself said, and I'm quoting from their brief, she explicitly testified that she was not offering an opinion as to what constitutes a claim versus what constitutes a demand under the Bankruptcy Code. But she did say that when you look at their litigation history, the experiences of other publicly traded companies, and an analysis of the types of factors such as a building renovation that might cause future claims to be filed, she thinks it's likely. But that does not answer the question of whether those are claims which are supposed to be a due process, which means you get an opportunity to file a claim, you get an opportunity to vote on a plan, you get an opportunity to object to a plan if you don't like your treatment, or demands. I think technically what she said was that there's likely to be future demands. That's correct, but as I said, Grace has acknowledged that she was using that term in the colloquial sense. That was not testimony, and it was not evidence that those were demands under the 524G sense, and not claims. Okay, if there was that testimony put in, and I realize you disagree with it and claim that it was off point, but to me it seems if it was off point, it was only off point somewhat. And if you didn't put anything in, and the court relied on that to show that Grace was likely to be subject to future demands, which seems to be a finding of fact, how are we to say that that's clearly erroneous? Because there is no record evidence to show that either the bankruptcy court or the district court required any evidence of the likelihood of future demands as distinguished from claims. And indeed... So it comes back to your distinction, right? In order for your argument to win, we have to accept your distinction that demand and claim are mutually exclusive terms, right? I think on that issue that's correct. I think on that issue that's correct. I've run out of time, but I'm glad to address any others. How much time did you reserve for rebuttal? I've reserved two minutes for rebuttal. That's fine. We'll give you that and more. Thank you. Thank you. Your Honors, when he says they were singled out because every other case was settled, that's just dead wrong. It's a good thing that 119 out of 120 of the Spites and Runyon clients settled. It's a good thing that all but one out of 420 of the remaining PD claims settled. That might be, Mr. Donnelly, but I don't take that to be the point that Mr. Rosendorf is making. The point I understand to be making is these other people, had they not settled, were going to get to go to state court or someplace else, but we, as he put it, are saying there's form shopping going on here. And he's incorrect on that, because under the plan in Class 7A, which is all the current property damage filers who filed a proof of claim and submitted to the bankruptcy court's jurisdiction, everyone in that class goes to the bankruptcy court to litigate their claim. Now he says that's not discriminatory. It's him and everyone else, and he can't create discrimination by being the last holdout and saying because I didn't settle and everyone else did. But factually, he is the last holdout, and the future claims, the future claimants, will not be required to go to bankruptcy court. They'll have a choice. Yes, sir, and that's not a function... And why is that not unfair to Anderson Hospital? Because of the direct Supreme Court precedent on point, Langenkamp v. Kulp, Your Honor, which says when a party comes... That's the same argument the creditors in Langenkamp made and the creditors in Winstar and Travelers and the cases this circuit made. They came in and said, boy, it's not fair just because we filed a proof of claim to subject us to the bankruptcy court's jurisdiction. That's not fair. And the Supreme Court said, no, once you've submitted, that is fair. You're submitted to the bankruptcy court's equitable jurisdiction, and you've waived your right for a jury trial. You've waived your right to shop for venue. That applies to everyone in 7A. Yeah, but there was... Let me just finish and I'll come back. What he's saying is it's unfair and discriminatory to get this so-called better deal, and I'll come back to the better deal in a moment because they just quoted the one line or they didn't quote the next line of Judge Sanders' testimony. But he says that's unfair because the future claimants who aren't in Class A, they're just future claimants represented by the property damage future claimants representative, they can go into federal district court and sue. They can't go back to state court. They can go to federal district court. Well, the reason they get that deal is you can't constitute... They're not before the court. These are future claimants. We don't have the ability, even if we want to, to compromise their future jury trial rights. In contrast to everyone in Class A who submitted a proof of claim, including Anderson, who under clear Supreme Court President Langenkamp v. Kulp waived their jury trial rights, and the creditors in Langenkamp... Let me just briefly take a minute on that case. Well, why are they any different just because they're property damage claimants from the future claimants who are going to be channeled in the personal injury trust? Different class, and the discrimination argument only deal... Under 1123A4 only deals with people within the same class. The personal injury claimants only get 25 to 30 cents in the dollar. Property damage gets paid in full. So is that a better deal? They get paid in full based on what the trust mechanism gives them. That may not be equal to what a jury in South Carolina may get. Yes, and that's not a function of the plan, Your Honor, and it's not a violation of the Bankruptcy Code. It's a function of the Supreme Court precedent that says once you file your proof of claim, even though you may think it's unfair, you have submitted to jurisdiction and waived your jury trial right, waived your right to shop the venue. It's just directly on point. In every case they say it's unfair. But let me go one step further because this isn't a case where he just, you know, I had a gun to my head and I filed a proof of claim, and how can I be subject to the Bankruptcy Court jurisdiction, even though the Supreme Court says that's what the law is? This is a case where he chose to actively, aggressively litigate class certification in the Bankruptcy Court, extensive discovery, evident hearing, full-blown hearing. For years and years he stepped forward, and he didn't do well in the Bankruptcy Court. Lost on numerosity, also lost in the alternative. Judge Fitzgerald found class action wasn't superior. Questions of fact and common questions in fact and law don't predominate because you've got statute of limitations, which is fact-specific. District Court found the same thing. So his proposition of law is that you can come in, be subjected under Supreme Court precedent to the jurisdiction of a Bankruptcy Court, litigate aggressively for many, many years, and lose, and then if you don't get a do-over in South Carolina State Court, that's a violation of the Bankruptcy Court. There is no proposition of law that supports that at all. None. I see I'm getting close to out of my time. You have answered the assertion that the PD trust needs to be looked at separately. They make that assertion on page 40 of their opening brief. It struck me as a significant thing to say. Are they right? Are they wrong? You know, I take the position to be you guys set this up. You didn't have to set it up the way you set it up, but you chose to set it up as a separate trust and it's properly looked at separately. What's the answer? The statute addresses PD and PI as the first answer, Your Honor. It's all unitary. The statute says we're dealing with we need a comprehensive national solution for the debtor's personal injury, wrongful death, and property damage. They're all there. The reason they're in different classes is because the facts and the theories of liability are different, so it's appropriate to put PD in one class, PI in another. But they're very tightly linked. They both arise from the debtor's underlying, the claims both arise from the debtor's underlying liability for property damage. And it's real easy to look back now with 20-20 hindsight and say, well, property damage isn't as big a deal, isn't as big a liability as personal injury, and it wasn't. But the whole plan coming together was fragile and would not have unless both property damage and personal injury were dealt with. This is in the record, and the reason is the property damage liability was big. There were 385 pre-petition claims, $785 million of settlements paid. This is Dr. Martin relied on not only was there that pre-petition record, but there were 4,000 claims continuing during the case. So it was a substantial liability. And one of the key hinge points, one of the key necessary elements for the plan, was to get the funding over a billion dollars from the two former subsidiaries from the fraudulent transfer settlement. The property damage litigation was such a big deal to them that they made a conditioned precedent, Sealed Air and Fresenius, they made a conditioned precedent to their settlement agreement and their funding of both the PD trust, where they pay in $180 million, and the PI trust, where they pay in over a billion dollars contingent on the PD trust and PD property damage trust and property damage injunction being entered. So totally integral. If you tried to carve out or cleave out property damage from this plan, David Austern, the personal injury futures rep, testified the whole plan falls apart. There is no plan because you lose the billion dollars because the PD is such a substantial liability. The settlements with the other property damage claimants took place how soon before the confirmation hearing? Did it take place before the plan? During. The confirmation hearing went on a long time because I think over nine or 12 months, actually, and it stopped and started. But there was something like 90 at the start. The Solo case was settled shortly before the start. There were 16 State of California cases in Class 7A, same class of Anderson, during the confirmation hearing. So there were 17 claims. All the claimants within that class treated exactly the same. Submit to bankruptcy court, just jurisdiction. How soon before the confirmation concluded? I'm sorry, I don't recall, Your Honor. But were they all settled before the close of confirmation? Before the order. Except for AMH. The California claims were settled before the order. But then that takes me back to, you know, do we have an obligation to hold off settling every claim but one because it will look like singling out? You know, we don't have to. If it's a good settlement and those settlement agreements and approvals went before Judge Fitzgerald and Anderson didn't object to any of those settlements as being unfair or improper. But at this point it almost seems like it might call for an amendment to the plan to eliminate Class 7A if you only got one possible claimant. Well, there are I think 35 Canadian claimants potentially in that class on appeal. They were dismissed on summary judgment. I forget on the grounds. And they would come back in that class as well, Your Honor. The plan was confirmed when? January 2011. And obviously has not gone effective yet, has it? Has not gone effective, correct. And the reasoning for that is? The reason it hasn't gone effective is it's a condition. Among other reasons, it's a condition of getting this billion-dollar funding from the former subsidiaries in the fraudulent transfer litigation that a final non-appealable order be entered. And so we can't normally, I know you'd go effective and you'd argue equitable mootness and substantial consummation. We can't do that because getting that critical funding over a billion is contingent on a final non-appealable order having been entered. Even though the market value of the entity right now, I realize we're digressing, but it's about $4.9 billion? It's a little over that. It's a little over $4.9 billion. It's a little over that, but it's not our choice. They have, the former subsidiaries, have the legal right to come and block us. So as we say in South Philly. We don't have a choice. We'd love to, as much as we enjoy litigating going on, we'd love to conclude and get out of this, but we can't. I was going to say, as we say in South Philly, you've done good. So if you've done that well, why is it necessary to wait on whether you get an additional billion-dollar funding, especially with regard to these types of claims of which right now we only know an extent of one? If it was up to me. The plan says we have to get their consent. Sealed Air and Fresenius have to consent and waive a condition precedent, and we can't force them to do that. It's not our choice. How close are you? How close are you? Timing-wise to having that resolved. We've been working hard on it for two or three years without success. I personally have pushed that issue to try to get it done, and I don't see it happening until we get a final non-appealable order. I wish it were. I've really tried. Okay. Thank you. Thank you, Eric. Mr. Rich. Thank you, Your Honors. I have a very brief stay here, and I wanted to just say a couple of things real quick. Just a factual question. If the plan was confirmed in early 2011, have there been any property claims or demands made since then? Well, that's a question we can't answer, because there is no requirement that those claims be made between that time and this. To your knowledge, have any been made since then? Not to my knowledge. Well, there was one person who made telephone calls, but this isn't in the record, so I can't really. But they haven't made a demand yet? They haven't made a formal demand, no, Your Honor. So the only thing that's hanging out there right now is AMH? As far as traditional property damage, current known claimants, that is correct. Thank you. But that was sort of one of the points I wanted to make. You couldn't just do away with the class, because as far as Judge Sanders is concerned, we think there are going to be a lot of future claimants. And so eliminating that property damage trust was not a good idea. Probably months later, but we're not seeing them yet. Well, and like I said, you wouldn't be seeing them in all likelihood until there is a trust that is established. Once the trust is set up, and this is true for property damage and personal injury, the claims start coming. They call it the field of dreams theory. If you build it, they will come. And they do come. I wanted to correct one thing. I think, unless I heard it wrong, I thought that Judge Fischer implied that the traditional property damage claims were going to be valued by a trust as opposed to in court, and that's not the way it works. I did say that. Traditional property damage claims are going to be litigated in the tort system. They'll be litigated in the federal tort system. Those are your future claims. Yes, Your Honor. Those are my future claims. I understood that. Okay. Thank you. Judge Sanders felt very strongly that this was a good deal for his constituents, and he felt that strongly because, in his view, the future claimants are getting a great deal, even if you look at it as if there had been no bankruptcy at all. You have a bunch of people who could have gone to court and got a bunch of judgments. That's what it would be without the bankruptcy. With the bankruptcy, you get people to go out and get a bunch of judgments, just liquidated their claims in the exact same way had there been no bankruptcy. Well, they're the exact same way, right? I mean, look, what's going on here is the folks at AMH, they want a class action settlement. They want the effect of a jury hanging over somebody's head, and that tends to move negotiating positions. That's what they want. So when you say it's just the same, is it really just the same? Well, it differs from that. In that respect, it does differ. There is no jury for Anderson Memorial Hospital. Right. And their assertion, their vehement assertion, is we were out there in South Carolina for eight years. We had won the day. We should have the chance to be there and to hold us, quote, hostage, unquote. In the bankruptcy court, it's just fundamentally unfair because property dams claims are different. There's not going to be a bunch of them in the future. Anyway, what's, you know, where's the flaw in that assertion? There's two flaws in that assertion. The first flaw is they're very careful in their brief about saying they want to go back to their home forum. Well, their home forum was the state courts in South Carolina, and no property damage claimant is ever going to be allowed to litigate in a state court. Not Anderson, not my future claimants, nobody. That's flaw number one. Flaw number two is that the reason that they're in the bankruptcy court in the first place, as Mr. Donnelly said, is because they actively inserted themselves there. One can argue about whether it's fair or whether it's unfair that a proof of claim waives your jury trial rights and subjects you to bankruptcy court jurisdiction. But what you can argue about is the fact that Anderson went in there and did a lot more than that. They actively litigated for years. They pushed a class certification claim, which was not necessary to do to preserve their individual rights. So there's no question that they submitted themselves to the jurisdiction. Weren't they invited to? Weren't they invited to by the district court? Well, I mean, the bar date notice in a way was an invitation, I suppose, but they didn't have to pursue it on a class-wide basis. I mean, that shows to me anyway that they were in for more than just their individual claim. That shows a submission to jurisdiction that goes beyond the garden variety case where you file your own individual proof of claim. So they were in it on purpose and they were in it, frankly, as Judge Jordan recognized, they're in it because they want their class action. I mean, it's seldom that you see somebody's motivation as clear as it was printed in their own reply brief. They're suggesting to this court that what this should be here is a big class action in South Carolina. Well, it shouldn't be. It should be what it is. The plan has been confirmed. Judge Sanders hopes that you will affirm it. Thank you very much. Mr. Rosendorf. Let me respond to that last point first, which I think demonstrates a fundamental misconception of the obligations of a class representative. Anderson, as a putative class representative, could not simply having designated itself and having sought that relief decide, I just want to go pursue my own claim. When it filed a claim in the bankruptcy court, which it did in response to the notice, it filed a claim on behalf of itself, a claim on behalf of its statewide class, and a claim on behalf of the nationwide class. It only litigated the Rule 23 class certification issues after an objection was filed to the claim and after it believed that it was required to do so. Let's accept all that is true. Speak to the assertion made by Mr. Donnelly that their Supreme Court authority, directly on point, you can't have it both ways. I'm familiar with Langenkamp. I understand the decision, but I think that the flip side of that is that a plan cannot provide disparate treatment to similarly situated creditors. And regardless of Langenkamp, this plan does that. It gave Solo, who had also filed a proof of claim and was a live property damage claim at the time of confirmation like us, the right to go back to state court. It's not impossible. Were they in a different subclass? No. No, they were part of Class 7. It was a property damage claim just as ours. But the case management order said, Solo, you can go back to state court. Anderson, you have to stay here. And future demands, you can go out to federal district court. And so we're not suggesting that they could not potentially require claims to be in bankruptcy court, but having provided more favorable treatment to one class than another, they couldn't then discriminate against Anderson to provide less favorable treatment. And that's part of the fundamental guarantee of equality of treatment under the bankruptcy code. Plans routinely give more favorable treatment to some classes of creditors than they have to. You do that to get their support. But when you do so, you can't pick and choose among them who's going to get that more favorable treatment. I'd also – I'm out of time, but I'd like to also just – We'll give you a couple more minutes. Thank you. Briefly address the fundamental question of why you need a property damage trust here. Because as you were pointing out, the only live property damage claim at this point is Anderson Memorial Hospital. According to the debtor's testimony and the plan proponent's witnesses, they only anticipate $37 million of liability. But once the plan was – Demands. When the plan was first proposed, there were still a number of claims not settled. Is that correct? There were very few. There were very few. There were. And by the time we got to the confirmation hearing, there were virtually none. The live property damage claims, other than Solo and Anderson, were in null set. And so why are we dealing with this through a trust, with a reorganized debtor that's going to be worth $5 billion, which is, as Mr. Rich said, sending those future demands out to litigate in the tort system. It's not like there's a process involved to limit litigation. Why is this being done through a trust? And the answer, I think, was also provided, which is because sealed air in Fresenius asked for it. But that's not enough to satisfy the requirements of 524G. Why isn't it? Why isn't the fact that $1 billion is being brought to the table enough to make a district court, a bankruptcy court, and a whole bunch of other people say, you know what, it's better all the way around to have them at the table than to have them not at the table. Why isn't that enough? Because that does not satisfy the requirements of 524G. 524G is not designed to simply answer to the demands of settling parties. It's designed to answer to the demands, as defined in 524G, of prospective future liabilities that could not otherwise be dealt with in a plan. A billion bucks. A billion bucks is a lot of money. Well, to me anyway. I realize given the billable hours in this room. He's just jealous. But that's a whole lot of money for future claimants, not just for settlement purposes, but to fund a trust to manage future liabilities. You seem to be dusting that off. And if it were not being used as a predicate to provide this disparate treatment of our claim, we would probably be a lot more happy with it. Thank you very much. Thank you to all counsel for well-presented arguments.